**EXHIBIT 3**

1  PACIFIC TRIAL ATTORNEYS
   A Professional Corporation
2  Scott J. Ferrell, Bar No. 202091
   sferrell@pacifictrialattorneys.com
3  Victoria C. Knowles, Bar No. 277231
   vknowles@pacifictrialattorneys.com
4  4100 Newport Place Drive, Ste. 800
   Newport Beach, CA  92660
5  Tel: (949) 706-6464
   Fax: (949) 706-6469
6
   Attorneys for Plaintiff
7

**Electronically FILED by
Superior Court of California,
County of Los Angeles
5/30/2025 2:59 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By C. Cervantes, Deputy Clerk**

8              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

9                        **COUNTY OF LOS ANGELES**

10

11  JESSE CANTU,                          Case No.  25STCV15816

12            Plaintiff,                  **COMPLAINT FOR: (1) VIOLATION OF
                                          CAL. BUS. & PROF. CODE § 17501; AND (2)**
13       v.                               **CONSUMERS LEGAL REMEDIES ACT,
                                          CAL. CIVIL CODE § 1750 ET SEQ.**
14  LUXOTTICA OF AMERICA INC., an Ohio
    corporation,
15
             Defendant.
16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

## I.      NATURE OF ACTION

Defendant advertises fictitious regular prices (and corresponding phantom discounts) on products sold through its website at www.oakley.com (the "Website"). This practice allows Defendant to fabricate a fake "reference price," and present the actual price as "discounted," when it is not.  The result is a sham price disparity that is *per se* illegal under California law.

## II.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over all causes of action asserted herein.

2.      Defendant is subject to jurisdiction under California's "long-arm" statute found at California Code of Civil Procedure section 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."  Indeed, Plaintiff is informed and believes and thereon alleges that Defendant generates a minimum of eight percent of its national Website sales to Californians such that the Website "is the equivalent of a physical store in California." Since this case involves false representations made Defendant's Website and Plaintiff's purchase was made through the Website from within California, California courts can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal. App. 5th 1231, 1235 (2020).

3.      Venue is proper in this County.

## III.      PARTIES

4.      Plaintiff  is a citizen of California who purchased a product identified below from Defendant's Website.

5.      Defendant is an online retailer that sells products nationwide and in California.

## IV.      FACTUAL ALLEGATIONS

6.      Defendant, through its Website, offers products for sale to California consumers.

7.      Defendant advertises fictitious prices (and corresponding phantom discounts) on such products. This practice allows Defendant to fabricate a fake "reference" price, and present the actual price as "discounted," when it is not.

1        8.      On April 10, 2025, Plaintiff purchased "Thinlink" (the "Product") from Defendant for

2  the "discounted" price of $149.80, which Defendant compared to a "strike-through" reference price of

3  $214.00, after visiting the page shown below:



9.      The reference price described in the preceding paragraph was not the "prevailing market price" in the 90 days preceding the above access date.  Likewise, the advertisement does not "clearly, exactly and conspicuously" state the date upon which the reference price was the prevailing market price.

10.     Indeed, more than 90 days ago, Defendant was offering the exact same Product for a discounted price with a similar "phantom discount" on November 14, 2024, as shown below and as documented by the "Wayback Machine":[1]

---

[1] The "Wayback Machine" is a digital archive of the World Wide Web that allows users to view past versions of websites.  It automatically captures snapshots of webpages at various points in time, and stores them with timestamps.  It is used to determine how a website looked in the past, analyze the evolution of a website, and retrieve information that may no longer be available on the current iteration of a website.  Information retrieved via the Wayback Machine is generally treated as authoritative, subject to proper authentication.  *See United States v. Kieffer,* 681 F.3d 1143, 1154 n.3 (10th Cir. 2012) (holding Wayback Machine downloads properly authenticated).



11.     These pricing and advertising practices reflecting high-These pricing and advertising practices reflecting high-pressure fake sales are patently deceptive. They are intended to mislead customers into believing that they are getting a bargain by buying products from Defendant on sale and at a substantial and deep discount. The reference price is, therefore, an artificially inflated price. In turn, the advertised discounts are nothing more than phantom markdowns.

12.     Plaintiff's counsel routinely monitored the Product's sales price on Defendant's Website in the period between the two dates referenced in the preceding paragraphs, and has confirmed that the Product purchased by Plaintiff was not offered for sale on Defendant's Website primarily at the reference price during that period, such that the reference price was not the "prevailing price" for the Product during the period.

13.     Defendant knows that the prices for the Product are fake and artificially inflated and intentionally uses them in its deceptive pricing scheme on its Website to increase sales and profits by misleading consumers to believe that they are buying products at a substantial discount. Defendant thereby induces customers to buy products they never would have bought—or at the very least, to pay more for merchandise than they otherwise would have if Defendant was simply being truthful about its "sales."

14.     The effectiveness of Defendant's deceitful pricing scheme is supported by longstanding scholarly research. In the seminal article entitled *Comparative Price Advertising: Informative or Deceptive?* (cited in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013)), Professors Dhruv Grewal and Larry D. Compeau write that, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. PUB.

1    POL'Y & MKTG. 52, 55 (1992). Therefore, "empirical studies indicate that, as discount size increases,

2    consumers' perceptions of value and their willingness to buy the product increase, while their intention

3    to search for a lower price decreases." *Id.* at 56. For this reason, in *Hinojos*, the Ninth Circuit held that

4    a plaintiff making a claim of deceptive pricing (strikingly similar to the claim at issue here) had standing

5    to pursue his claim against the defendant retailer. In doing so, the Court observed that "[m]isinformation

6    about a product's 'normal' price is . . . significant to many consumers in the same way as a false product

7    label would be." *Hinojos*, 718 F.3d at 1106.

8        15.    Professors Compeau and Grewal reached similar conclusions in a 2002 article: "decades

9    of research support the conclusion that advertised reference prices do indeed enhance consumers'

10   perceptions of the value of the deal." Dhruv Grewal & Larry D. Compeau, *Comparative Price*

11   *Advertising: Believe It or Not*, 36 J. OF CONSUMER AFFAIRS 287 (2002). The professors also found that

12   "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly

13   high." *Id.*

14       16.    In another scholarly publication, Professors Joan Lindsey-Mullikin and Ross D. Petty

15   concluded that "[r]eference price ads strongly influence consumer perceptions of value . . . Consumers

16   often make purchases not based on price but because a retailer assures them that a deal is a good bargain.

17   This occurs when . . . the retailer highlights the relative savings compared with the prices of

18   competitors." Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search:*

19   *Deception and Competition*, 64 J. OF BUS. RESEARCH 67 (2011).

20       17.    Similarly, according to Professors Praveen K. Kopalle and Joan Lindsey-Mullikin,

21   "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value"

22   and "have a significant impact on consumer purchasing decisions." Praveen K. Kopalle & Joan Lindsey-

23   Mullikin, *The Impact of External Reference Price on Consumer Price Expectations*, 79 J. OF RETAILING

24   225 (2003).

25       18.    The results of a 1990 study by Professors Jerry B. Gotlieb and Cyndy Thomas Fitzgerald,

26   came to the conclusion that "reference prices are important cues consumers use when making the

27   decision concerning how much they are willing to pay for the product." Jerry B. Gotlieb & Cyndy

28   Thomas Fitzgerald, *An Investigation into the Effects of Advertised Reference Prices on the Price*

1    *Consumers Are Willing to Pay for the Product*, 6 J. OF APP'D BUS. RES. 1 (1990). This study also

2    concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product

3    simply because the product has a higher reference price." *Id.*

4        19.    The unmistakable inference to be drawn from this research and the Ninth Circuit's

5    opinion in *Hinojos* is that the deceptive advertising through the use of false reference pricing employed

6    here by Defendant is intended to, and does in fact, influence customer behavior by artificially inflating

7    customer perceptions of a given item's value and causing customers to spend money they otherwise

8    would not have, purchase items they otherwise would not have, and/or spend more money for a product

9    than they otherwise would have absent the deceptive advertising

10        20.    Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek

11    equitable remedies in the alternative because Plaintiff has no adequate remedy at law.

12        21.    A legal remedy is not adequate if it is not as certain as an equitable remedy.  The elements

13    of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal

14    claims.  For example, Plaintiff's claim under section 17501 (an equitable claim) is predicated on a

15    specific statutory provision, which prohibits advertising merchandise using a former price if that price

16    was not the prevailing market price within the past three months.  (Cal. Bus. & Prof. Code § 17501.)

17    Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under section

18    17501, while not being able to prove one or more elements of Plaintiff's legal claim under the Consumers

19    Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750 *et seq.*, seeking damages.

20        22.    In addition, to obtain a full refund as damages, Plaintiff must show that the Product that

21    Plaintiff bought has essentially no market value.  In contrast, Plaintiff can seek restitution without

22    making this showing.  This is because Plaintiff purchased a Product that Plaintiff would not otherwise

23    have purchased, but for Defendant's representations.  Obtaining a full refund at law is less certain than

24    obtaining a refund in equity.

25        23.    Finally, legal damages are inadequate to remedy the imminent threat of future harm that

26    Plaintiff faces.  Only an injunction can remedy this threat of future harm.  Plaintiff would purchase either

27    the Product or other products from Defendant again in the future if Plaintiff could feel sure that

28    Defendant's regular prices accurately reflected Defendant's former prices and the market value of the

products, and that its discounts were truthful. But, without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, Plaintiff is unable to rely on Defendant's advertising in the future, and so Plaintiff cannot purchase products that Plaintiff would like to purchase.

24. **Plaintiff currently brings this Complaint as an individual action, but will amend this Complaint to assert claims on behalf of a class if Defendant fails to take appropriate action to remediate the damage caused by its misconduct prior to the time that Defendant files a responsive pleading**.

## V.      CAUSE OF ACTION

### FIRST CAUSE OF ACTION

**Violation of California's False Advertising Law**

**Cal. Bus. & Prof. Code § 17501**

25. Plaintiff incorporates by reference the foregoing paragraphs as if set forth hereinafter.

26. Section 17501 of the Business and Professions Code provides in relevant part that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal Bus. & Prof. Code § 17501.

27. Simply put, section 17501 means that if an item is "on sale" for 90 days or more, the seller is violating section 17501.

28. Here, the Product was not sold primarily at the higher reference price in the 90 days prior to Plaintiff's purchase of the Product via the Website.

29. As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiff has suffered injury in fact and has lost money.

### SECOND CAUSE OF ACTION

**Violation of Consumers Legal Remedies Act**

**Cal. Civil Code § 1750 *et seq*.**

30. Plaintiff incorporates by reference the foregoing paragraphs as if set forth hereinafter.

31.     The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods or services to any consumer.  (Cal. Civ. Code § 1770(a).)

32.     The practices described herein, specifically Defendant's advertising and sale of its products, were intended to result and did result in the sale of such products to the consuming public and violated and continues to violate section 1770(a)(13) of the Civil Code by "[m]aking false or misleading statements of fact concerning reasons for, existence of, or, amounts of, price reductions."

33.     Plaintiff is an individual who acquired, by purchase, the Product, which is a good, for personal, family, or household purposes.

34.     Defendant deceived Plaintiff by advertising the price of the Product in a misleading manner contrary to California statutes including section 17501 of the Business and Professions Code.

35.     Defendant made material misrepresentations to deceive Plaintiff.

36.     In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and depriving Plaintiff of rights and money.

37.     Defendant knew that the Product's advertising of its price on its Website was misleading and deceptive and the advertising of its other products on its Website was similarly misleading and deceptive.

38.     Defendant's advertising of the Product was a material factor in Plaintiff's decision to purchase the Product.  Based on Defendant's advertising of the Product, Plaintiff reasonably believed that the reference price of the Product purchased by Plaintiff was genuine.  Had Plaintiff known the truth of the matter, *i.e.*, that the reference price of the Product was false or misleading, Plaintiff would not have purchased the Product.

39.     Plaintiff has suffered injury in fact and has lost money as a result of Defendant's deceptive, unfair, and unlawful conduct.

40.     Prior to the commencement of this action, Plaintiff – on behalf of a class of similarly situated consumers – sent a letter notifying Defendant of the particular wrongdoing that violates the CLRA and demanded that Defendant appropriately correct its advertising and/or provide another

appropriate remedy of the violations to the entire class.  The notice was in writing and sent by certified mail, return receipt requested.

41.     More than 30 days have elapsed since Plaintiff sent such demand letter to Defendant, but Defendant failed to respond by either correcting its advertising and/or otherwise providing an appropriate remedy of the violations or offering to do so within a reasonable time.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a.     For all available legal, equitable, and declaratory relief;

b.     For statutory damages;

c.     For attorneys' fees and costs as allowed by law; and

d.     For any and all other relief at law or equity that may be appropriate.


Dated:  May 30, 2025                          PACIFIC TRIAL ATTORNEYS, APC

                                              By:_____
                                              Scott. J. Ferrell
                                              Attorneys for Plaintiff